NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                        :
TRANS USA PRODUCTS, INC.,               :
                                        :
            Plaintiff,                  :   Civil Action No. 07-5924 (JAP)
      v.                                :
                                        :
HOWARD BERGER COMPANY, INC.,            :
a/k/a HBC Global Source 1, et al.,      :   **OPINION**
                                        :
            Defendants.                 :
_____: 

PISANO, District Judge.

      On December 10, 2007, Plaintiff Trans USA Products, Inc. ("Plaintiff") filed a Complaint asserting six counts against Defendants Howard Berger Co., Inc., a/k/a HBC Global Source 1, Corporations A through Z, fictitious entities owned by or affiliated with Howard Berger Co., Inc., Estate of Howard Berger, Scott Berger, and David Berger (collectively, "Defendants") based on allegations that Defendants sold consumer wiring and electrical devices bearing counterfeit certification marks.  Currently before the Court is Defendants' motion to dismiss Counts I and II of Plaintiff's Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants also seek the Court to refrain from exercising supplemental jurisdiction over Plaintiff's remaining state law claims.  Plaintiff opposes the motion and seeks leave to amend its Complaint.  For the reasons set forth herein, the Court grants Defendants' motion to dismiss and grants Plaintiff leave to amend its Lanham Act claim only to the extent Plaintiff seeks a claim under section 43(a)(1)(A).

I.      **BACKGROUND**

Both Plaintiff and Defendants are competitors "in the business of purchasing and re-selling to distributors and retailers consumer wiring and related electrical devices ('Wiring Devices')." (Complaint ("Cmplt.") ¶ 8, 15). As part of that business, "it is common practice . . . to specify" if the Wiring Devices meet certain safety standards promulgated by Underwriters Laboratories ("UL"). (Cmplt. ¶ 14). UL tests Wiring Devices to determine if they meet UL's "Standards for Safety[,]" which correlate with model installation codes. (Cmplt. ¶ 10, 12). If a product meets its Standards, UL "lists" that product as certified and permits manufacturers to place a "UL Listed Mark" on its product. (Cmplt. ¶ 11-12).

As Plaintiff alleges, "[t]he UL Listed Mark [is a] trademark, [and] its display on a product or the product packaging communicates to prospective purchasers that the product has been tested in accordance with established industry specific safety standards and has been determined to meet those standards." (Cmplt. ¶ 13). Indeed, Plaintiff claims that "[m]any distributors and retailers are unwilling to sell products that are not UL listed." (Cmplt. ¶ 14). According to Plaintiff, all of the Wiring Devices it has sold have been UL certified. (Cmplt. ¶ 9).

Plaintiff bases its Complaint on the allegation that Defendants sold Wiring Devices bearing counterfeit UL Marks. Plaintiff specifically alleges that, "[a]t various times relevant hereto, [Defendants] knowingly and/or negligently acquired and re-sold products that bear counterfeit UL Marks and/or products bearing UL Marks which . . . they knew or should have known [to] have been 'de-listed.'"[1] (Cmplt. ¶ 16). Plaintiff further claims that Defendants, by

---

[1] Plaintiff does not specify how a UL Mark becomes "de-listed" or the implications of a Mark being de-listed.

selling products bearing counterfeit or "de-listed" UL Marks, "communicated a false endorsement of its products and falsely cloaked them with safety characteristics [that] they do not and have not possessed in . . . their advertising of these products."  (Cmplt. ¶ 17).  Moreover, Plaintiff asserts that these products sold by Defendants are "typically significantly cheaper in cost than those [products] offered by manufacturers whose products bear legitimate UL Marks, such as the manufacturers from whom [Plaintiff] acquires . . . its products."  (Cmplt. ¶ 18).  Due to the cheaper price, Plaintiff claims that Defendants "have been able to underprice [Plaintiff]'s line of products in the open marketplace."  (Cmplt. ¶ 18).

Based on these allegations, Plaintiff asserts statutory claims arising under the Lanham Act, 15 U.S.C. § 1125(a), the federal Racketeer Influence and Corporate Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*, the New Jersey RICO Act, N.J.S.A. 2C:41-1 *et seq.*, ("NJRICO"), and N.J.S.A. 56:8-1 *et seq.*, governing unconscionable trade practices, as well as common law claims of unfair competition and tortious interference with prospective economic advantage. Defendants now move to dismiss Plaintiff's claims arising under the Lanham Act and the RICO Act for failure to state a claim upon which relief may be granted.  In addition, Defendants seek the Court to dismiss the pendant state law claims.  Plaintiff opposes the motion, arguing that its Complaint adequately sets forth its federal law claims and that, even if its Complaint is inadequate, any deficiency may be remedied by leave to amend the Complaint.

**II.    DISCUSSION**

  **A.    Standard of Review under Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  On a motion to dismiss, the

Court "must accept as true all factual allegations in the . . . complaint and all reasonable inferences that can be drawn from them." *Banks v. Wolk*, 918 F.2d 418, 419 (3d Cir. 1990). Nevertheless, recently refashioning the appropriate standard, the Supreme Court of the United States found that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal quotation marks omitted)).  Therefore, for a complaint to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, *supra*, 127 S. Ct. at 1965 (internal citations and footnote omitted).

However, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  A district court must provide a plaintiff an opportunity to amend its complaint even if the plaintiff does not seek leave to amend. *Ibid.* Generally, a court shall freely grant leave to amend, Fed. R. Civ. P. 15(a), but may deny leave "on the grounds that amendment would cause undue delay or prejudice, or that amendment would be futile[,]" *Winer Family Trust v. Queen*, 503 F.3d 319, 330-31 (3d Cir. 2007) (internal

quotation marks omitted).

    B.    Analysis

        1.    **The Lanham Act Claims**

Plaintiff asserts a claim arising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in Count I of its Complaint. Plaintiff claims that Defendants' act of selling the Wiring Devices bearing counterfeit and de-listed UL Marks "constute[s] a violation of the Lanham Trade-Mark Act, 15 U.S.C.A. §[]1125(a), in that certain of the consumer Wiring Devices sold by . . . them contain or bear a counterfeit UL Mark that is false and misleading as to the characteristics of that product or contain or bear a de-listed UL Mark that is false and misleading as to the characteristics of that product." (Cmplt. ¶ 20). Plaintiff further alleges that this violation caused it to suffer financial losses in the form of lost sales and profits. (Cmplt. ¶ 21).

Defendants now argue that these allegations are insufficient to establish a claim under section 43(a) of the Lanham Act. Defendants point out that Plaintiff failed to set forth which subsection of that statute it intended to invoke through its allegations; Plaintiff failed to clearly state in its Complaint whether its claims arise under subsection 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A), which governs claims of unfair competition by false representation, or subsection 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B), which governs claims of false advertisement. Arguing that the failure to specifically set forth the particular statute Plaintiff intended to invoke in its Complaint, Defendants submit that Plaintiff's claim is insufficient to meet the pleading requirement set forth in Federal Rule of Civil Procedure 8(a). Moreover, Defendants argue that Plaintiff has failed to adequately plead the elements of either a claim of false representation or false advertisement.

Plaintiff responds that it sufficiently pleads causes of action under both sections of 43(a). To support its argument, Plaintiff proffers a declaration by one of its officers and principals, who avers that UL published a warning on December 5, 2006 in respect of certain Wiring Devices bearing counterfeit UL Marks, and attaches that warning as an exhibit. (Eliot Buzil Declaration Feb. 15, 2008). That warning intended to notify the public that it had not evaluated certain products marked as "My Helper" that nevertheless bore counterfeit UL Marks. Plaintiff seeks to use this information to support its assertions and to bolster its claims as necessary, in the event the Court determines that Plaintiff has failed to set forth adequate section 43(a) claims. In that instance, Plaintiff seeks leave to amend its Complaint to add the information provided in the UL warning, as well as other unspecified information.[2]

As an initial matter, the Court rejects Plaintiff's reliance on this certification and exhibit to establish that the Complaint adequately pleads Lanham Act claims. As a general principle, a district court, ruling on a motion to dismiss, relies only on the complaint, exhibits attached to the complaint, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). Nevertheless, the Court will consider the information in light of Plaintiff's attempt to seek leave to file an amended complaint.

Section 43 of the Lanham Act aims "to protect persons engaged in interstate commerce

---

[2] Although Plaintiff seeks leave in its opposition brief to amend its Complaint, it did not provide the Court with a proposed First Amended Complaint. Rather, Plaintiff submits in its brief that it could amend its Complaint to provide greater specificity by: (1) identifying the products bearing the counterfeit UL Marks by providing their physical description, their brand name, and the specific UL file numbers and date codes that were counterfeit or de-listed; (2) specifying the time period in which Defendants sold the Wiring Devices; (3) identifying the markets in which Defendants sold the products; (4) identifying customers Plaintiff lost due to Defendants' activities; and (6) specifying that it seeks relief under 15 U.S.C. § 1125(a)(1)(A) and (B).

against unfair competition caused by false or misleading representations or advertising about goods, services, or commercial activities." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 357 (3d Cir. 1997), *aff'd*, 527 U.S. 666 (1999). To serve that aim, the Act imposes civil liability "for the use of a false or misleading description of fact, or false or misleading representation of fact in connection with the sale of goods in interstate commerce." *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 227 (3d Cir. 1990) (internal quotation marks omitted).

>Specifically, 15 U.S.C. § 1125(a)(1) provides:
>
>Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
>>(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>>(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
>shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). That statute, thus, provides for two separate causes of action: false or confusing designation of origin, sponsorship, or approval, and false advertisement.[3]

---

[3] In its opposition brief, Plaintiff argues that its Complaint adequately alleges both causes of action. However, the Court is strained to conclude that Plaintiff's Complaint adequately put Defendants on notice that Plaintiff raised both causes of action under the Lanham Act sufficient to meet Federal Rule of Civil Procedure 8(a)(2). Nevertheless, considering Plaintiff's blanket invocation of 15 U.S.C. § 1125(a), the Court, for purposes of this motion, construes the Complaint as pleading causes of action for false designation of approval and false advertisement.

First, to establish a claim under section 43(a)(1)(A) for false designation of approval, a plaintiff must show that the defendant "(1) uses a designation, (2) in interstate commerce, (3) in connection with goods, (4) which designation is likely to cause confusion, mistake, or deception as to (5) the origin, sponsorship, or approval of [the d]efendant's goods, and (6) [the p]laintiff has been or is likely to be damaged by these acts." *First Keystone Fed. Sav. Bank v. First Keystone Mortgage, Inc.*, 923 F. Supp. 693, 707 (E.D. Pa. 1996).

Second, liability arises under section 43(a)(1)(B) if the defendant makes a commercial message or statement that is either literally false, or literally true but ambiguous such that it has the tendency to deceive consumers. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 586 (3d Cir. 2002). This section, however, does not broadly apply to any misrepresentation, but rather is limited to "commercial advertising or promotion." *See, e.g.*, *Unisource Worldwide, Inc. v. Heller*, 1999 WL 374180, *6 (E.D. Pa. June 9, 1999); *Gordon and Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535 (S.D.N.Y. 1994). Courts define "commercial advertising or promotion" as: "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; ([4]) that is disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Unisource*, *supra*, 1999 WL 374180, at *6; *Accord Gordon*, *supra*, 859 F. Supp. at 1535.

Once invoking the application of section 43(a)(1)(B), a plaintiff must allege that:

(1) the defendant made false or misleading statements about the plaintiff's or [defendant's] own product; (2) there is actual deception or a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it

is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff.

*Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp. 2d 594, 598 (D.N.J. 2003) (quoting *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 171 (3d Cir. 2001) (internal editing marks omitted)); 15 U.S.C. § 1125(a)(1)(B). However, if the plaintiff alleges literal falsity, he need not show that the audience was misled. *Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005).

Further, based on fraudulent element necessary in a Lanham Act claim, this Court has applied an "intermediate" pleading requirement to false advertising claims asserted under section 43(a)(1)(B) that imposes a pleading standard between those standard required under Federal Rules of Civil Procedure 8 and 9. *Wellness Publ'g v. Barefoot*, 2008 WL 108889, *15 (D.N.J. Jan. 9, 2008). *See, e.g.*, *EVCO Tech. & Dev. Co., v. Buck Knives, Inc.*, 2006 WL 2773421 (E.D. Pa. Sept. 22, 2006). This intermediate approach, first applied in *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549 (E.D. Pa. 1985), strikes a balance "between application and outright rejection of Rule 9(b)." *Wellness*, *supra*, 2008 WL 108889, at *15 (internal quotation marks omitted). The slightly heightened pleading requirement is necessary in Lanham Act claims because, "[i]n litigation in which one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense." *Max Daetwyler*, *supra*, 608 F. Supp. at 1556. Thus, Plaintiff must plead its Lanham Act claims with more particularity than traditional notice pleading under Rule 8 but something less than the specificity of Rule 9.

As a threshold matter, the Court notes that counterfeit markings suggesting UL approval

fall within the protection of the Lanham Act.  *See, e.g.*, *United States v. 10,510 Packaged Computer Towers, More or Less*, 152 F. Supp. 2d 1189, 1193 & n.2 (N.D. Cal. 2001) (finding UL Marks fell within definition of "certification mark").  Indeed, UL owns and has registered its certification marks with the United States Patent & Trademark Office.  *Id.* at 1191; *Component Hardware Group, Inc. v. Trine Rolled Moulding Corp.*, 2005 WL 1514190, *33 (D.N.J. June 27, 2005) (discussing UL's ownership rights over UL-issued numbers).  As a result, the Lanham Act prohibits the use of counterfeit UL Marks such that the public "would assume that the [products] had been tested and approved by [UL]."  *10,510 Packaged Computer Towers*, *supra*, 152 F. Supp. 2d at 1200.

Nevertheless, Plaintiff's Complaint fails to adequately notify Defendants of "the nature of the alleged falsehoods" such that they could make a proper defense.  *Max Daetwyler*, *supra*, 608 F. Supp. at 1556.  Plaintiff does not identify the Wiring Devices Defendants allegedly sold that bore counterfeit marks, the time period in which these products were sold, how the marks were counterfeit or "de-listed," or whether Defendants sold the products in interstate commerce.  Construing as true Plaintiff's factual allegations, the Court holds that Plaintiff has not sufficiently pled any claim arising under section 43(a) of the Lanham Act.  Plaintiff's Complaint does not make any specific factual allegations to support a Lanham Act claim, but rather merely proffers "unsupported conclusions and unwarranted inferences" insufficient to meet the standard set forth in *Twombly*, *supra*.  *Baraka*, *supra*, 481 F.3d at 195.

Significantly, Plaintiff has made no attempt to meet the commerce requirement necessary for the application of the Lanham Act.  15 U.S.C. § 1125(a)(1).  *See, e.g.*, *Licata & Co. v. Goldberg*, 812 F. Supp. 403, 409 (S.D.N.Y. 1993) (finding that Lanham Act requires underlying

commercial activity to be "disseminated in commerce-i.e., not be purely local"). Rather than pleading commercial activity, Plaintiff seeks the Court to infer that Defendants sold the relevant Wiring Devices in interstate commerce. Plaintiff submits that this allegation "is implicitly contained" in paragraph 16 of its Complaint because "Defendants' customers are located in several different states . . . ."[4] However, the Court finds nothing in that paragraph from which the Court could infer that Defendants acquired or sold the allegedly misrepresented Wiring Devices from or to entities or individuals "in several different states[.]" Because the interstate commerce requirement set forth in the Lanham Act is a prerequisite for relief under section 43(a), Plaintiff's failure to make any allegation to support that requirement warrants a finding that Plaintiff has failed to state a claim upon which relief may be granted.

Moreover, assuming that Plaintiff may amend its Complaint to allege that Defendants sold the relevant Wiring Devices to consumers in various states, Plaintiff's Complaint nevertheless fail to set forth a claim of false advertising under the Lanham Act. As noted above, in order for Plaintiff to assert a claim under section 43(a)(1)(B), Defendants must have made misrepresentations in respect of "commercial advertising or promotion[.]" *Gordon*, *supra*, 859 F. Supp. at 1535-36. It has been held that "to pass the pleading threshold in a Lanham Act § 43(a)(1)(B) case, a plaintiff at the very least must identify some medium or means through which the defendant disseminated information to a particular class of consumers." *Podiatrist Ass'n v. La Cruz Azul De Puerto Rico, Inc.*, 332 F.3d 6, 19-20 (1st Cir. 2003). In this instance, Plaintiff

---

[4] Paragraph 16 of Plaintiff's Complaint provides in its entirety: "At various times relevant hereto, Berger Company and, upon information and belief, one or more of the Berger Entities have knowingly and/or negligently acquired and re-sold products that bear counterfeit UL Marks and/or products bearing UL Marks which it and/or they knew or should have known have been 'de-listed.'" (Cmplt. ¶ 16).

does not allege or indicate any particular advertising or promotional medium other than the markings on the product. Thus, Plaintiff has not adequately set forth a claim under section 43(a)(1)(B). Furthermore, Plaintiff's proposed amendments to its Complaint do not support this element in any respect.

Ultimately, the Court holds that Plaintiff has failed to adequately set forth any claim arising under the Lanham Act because it has not pled with the required specificity the elements of the claims for false designation of approval or false advertising. The Court, thus, grants Defendants' motion to dismiss Plaintiff's claims arising under the Lanham Act for failure to state a claim upon which relief may be granted. Further, the Court denies Plaintiff's request for leave to amend its Complaint in respect of its false advertising claim; Plaintiff's proposed amendments cannot cure the deficiencies in its false advertising claim, and, therefore, granting leave to amend Plaintiff's section 43(a)(1)(B) Lanham Act claim would be futile.

Nevertheless, liberally construed, Plaintiff's proposed amendments to its Complaint may enable it to sufficiently assert a claim under section 43(a)(1)(A) for false designation of approval. For that reason, the Court will grant Plaintiff leave to amend its Complaint only in respect of its claim arising under section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). The Court notes, however, that any amended claim under that section would be subject to the intermediate heightened pleading standard and, thus, if Plaintiff again fails to meet that standard, the claim may be subject to dismissal.

    2.  **RICO Claim**

Plaintiff also asserts a federal RICO claim in Count II of its Complaint. Plaintiff, citing to the entirety of the RICO statute, 18 U.S.C. § 1961 *et seq.*, alleges that Defendants Howard

Berger, David Berger, and Scott Berger "engaged in an enterprise in which they used and controlled Berger Company and . . . one or more of the Berger Entities as their instrumentality or instrumentalities through which they conducted a pattern of racketeering activity in trafficking in goods in violation of 18 U.S.C. §[]2320(a)."  (Cmplt. ¶ 25).  Plaintiff further claims that it, as a "direct competitor" of Defendants, "has lost substantial sales and profits and has otherwise suffered financial losses as a result of [D]efendants' violations of 18 U.S.C. §[]2320(a) and of 18 U.S.C. §[]1961 et seq."  (Cmplt. ¶ 26).  Based on those allegations, Plaintiff seeks damages and relief provided for in 18 U.S.C. § 1964(c).  (Cmplt. at 8-9).

Defendants move to dismiss this claim also on the basis that Plaintiff has failed to adequately allege a RICO claim.  Defendants point out that Plaintiff again did not specify which sections of the RICO statute it sought to base its claims.  Defendants argue substantively that Plaintiff does not identify any business injury necessary to confer standing on Plaintiff pursuant to 18 U.S.C. § 1964(c) and has not alleged with the required specificity that Defendants engaged in predicate racketeering acts, let alone a pattern of racketeering activity.  Defendants also contend that Plaintiff has failed to allege violations of any of the four subsections of 18 U.S.C. § 1962.  18 U.S.C. § 1962(a)-(d).

Plaintiff submits that it adequately alleged a RICO claim.  For the first time in its opposition brief, Plaintiff clarifies that it bases its RICO claim on 18 U.S.C. § 1962(b) and (c).  In particular, Plaintiff states that paragraphs 16 and 17 of the Complaint, in which Plaintiff alleges that Defendants sold products bearing counterfeit or "de-listed" UL Marks and that this action had the effect of communicating a "false endorsement of its products and falsely cloaked them with safety characteristics [that] they do not and have not possessed[,]" sufficiently set forth

the existence of racketeering activity. (Cmplt. ¶¶ 16-17). Plaintiff also argues that the allegation that it lost profits and customers due to Defendants' sales of these products is sufficient to show a business injury meeting the standing requirement of 18 U.S.C. § 1964(c).

In the alternative, Plaintiff argues that any deficiencies in its pleading could "be easily addressed in an amended complaint[.]" Without providing a proposed amended complaint, Plaintiff suggests that it could amend its pleading to make the following changes: (1) identify the products sold that allegedly bore the counterfeit and de-listed UL Marks; (2) specify the time period in which these products were sold by Defendants; (3) identify the markets in which the products were sold; (4) identify specific customers Plaintiff lost due to Defendants' "improper activities[;]" (5) specifically reference 18 U.S.C. § 1962(b) and (c); and (6) state it had sustained a business injury resulting from Defendants' alleged racketeering activity.

The Court finds that Plaintiff's Complaint fails to allege a civil RICO claim under 18 U.S.C. § 1964(c). Plaintiff's bare pleading, lacking even citation to the statutes upon which Plaintiff based its claim, failed to give Defendants adequate notice of the claim being asserted against them such that they could raise an adequate defense, and, thus, failed to meet the basic requirement of Federal Rule of Civil Procedure 8(a). Indeed, this failure is underscored by Defendants' moving brief in which Defendants were forced to construe for themselves how Plaintiff intended to base its civil RICO claim and, thereby, address every statute possible upon which Plaintiff may have based its RICO claim. In its brief, Plaintiff states, "[t]o be clear, Plaintiff never alleged any facts to support a cause of action under either 18 U.S.C. § 1962(a) and (d)[,] . . . as these are not the bases for Plaintiff's civil RICO claim." However, without citing to any particular statute, but, rather, only to the entire body of RICO statutory law, both the Court

and Defendants were left to conjure for themselves how Plaintiff intended to assert its claim. Such ambiguity cannot rise to the level of meeting the low-threshold notice pleading requirement.

Moreover, the Court also finds that, even if Plaintiff had notified the Court and Defendants upon which statute it intended to base its RICO claim, Plaintiff nevertheless fails to set forth such a claim. Section 1964(c) provides a civil remedy to "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . ." 18 U.S.C. § 1964(c). Section 1962(b) prohibits "any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). Further, section 1962(c) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c).

To make a claim under either subsection (b) or (c) of section 1962, Plaintiff must allege facts rising to a "pattern of racketeering activity." *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990). "A 'pattern of racketeering activity' requires commission of at least two predicate offenses on a specified list." *Ibid.*; 18 U.S.C. § 1961(5). To rise to the level of a "pattern," a plaintiff must make two additional showings: "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Here, Plaintiff alleges the predicate offense of trafficking in goods in violation of 18

U.S.C. § 2320(a). (Cmplt. ¶ 25). Indeed, that statute proscribes trafficking in counterfeit goods, and, although Plaintiff has not alleged sufficient facts to establish "trafficking" as defined by the statute, the Court assumes for purposes of this motion that Plaintiff's bare factual assertions suffice to allege that Defendants' conduct amounts to trafficking. Despite this assumption, Plaintiff's Complaint nevertheless fails to assert a RICO claim. Significantly, Plaintiff has not alleged, or even proffered facts in its Complaint or in its opposition brief sufficient to allege, a *pattern* of racketeering activity. Notably, taking as true all of Plaintiff's allegations, Plaintiff only proffers one predicate offense, rather than the required two, and makes no attempt to meet the relatedness requirement necessary to show a pattern of racketeering activity.

  Likewise, assuming Plaintiffs could amend its Complaint to allege that Defendants engaged in more than one predicate offense, Plaintiff fails to offer any amendment that would adequately allege continuity such that Defendants' acts would rise to the level of a pattern. Although "[p]redicate offenses committed in furtherance of a single criminal scheme can constitute a RICO pattern if the acts present the threat of future criminal activity[, t]he criminal conduct need not be ongoing." *Banks*, *supra*, 918 F.2d at 422. However, past conduct meets the continuity requirement only if Defendants' conduct "by its nature . . . projects into the future with a threat of repetition." *Ibid.* The Supreme Court of the United States has warned that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc.*, *supra*, 492 U.S. at 242. Here, Plaintiff alleges only that Defendants sold at some point in the past products bearing counterfeit or de-listed UL Marks; Plaintiff does

not allege that the conduct is ongoing or that there is even a *threat* of future criminal conduct.[5]

As a result, the Court concludes that Plaintiff has failed to allege a pattern of racketeering activity such that Plaintiff could sustain an action under section 1964(c). In addition, the Court notes that, similar to its Lanham Act claims, Plaintiff, in its RICO claim, does not allege that Defendants' conduct occurred in interstate commerce. For those reasons, the Court grants Defendants' motion to dismiss Plaintiff's RICO claim. Finally, the Court holds that Plaintiff's proposed amendments to its Complaint could not cure the deficiencies in its pleadings. Therefore, because granting leave to amend the Complaint would be futile, the Court denies Plaintiff's request to amend its Count II RICO claim.

## III. CONCLUSION

For the reasons expressed above, the Court grants Defendants' motion to dismiss for failure to state a claim as to Counts I and II of Plaintiff's Complaint. The Court also grants Plaintiff leave to amend its Complaint to specify any claim it may have under section 43(a)(1)(A) of the Lanham Act, but denies Plaintiff leave to amend its claims arising under section 43(a)(1)(B) or the RICO Act because any such amendment would be futile. Further, in the event Plaintiff does not timely file an amended complaint, the Court will decline to exercise pendant jurisdiction over Plaintiff's remaining state law claims and *sua sponte* dismiss Plaintiff's Complaint in its entirety. An appropriate order accompanies this Opinion.

---

[5] Although Plaintiff seeks injunctive relief restraining Defendants from selling or distributing any Wiring Devices bearing counterfeit or de-listed UL Marks, the Court finds this prayer of relief insufficient to amount to an allegation that Defendants' criminal conduct is ongoing or poses a threat of repetition.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: March 28, 2008