NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
TRANS USA PRODUCTS, INC.,           :
                                    :
          Plaintiff,              :   Civil Action No. 07-5924 (JAP)
                                    :
         v.                         :
                                    :
HOWARD BERGER COMPANY, INC.,        :
a/k/a HBC Global Source 1, et al.,  :   **OPINION**
                                    :
         Defendants.             :
_____ :

PISANO, District Judge.

      On December 10, 2007, Plaintiff Trans USA Products, Inc. ("Plaintiff") filed a Complaint asserting six counts against Defendants Howard Berger Co., Inc., a/k/a HBC Global Source 1, Corporations A through Z, fictitious entities owned by or affiliated with Howard Berger Co., Inc., Estate of Howard Berger, Scott Berger, and David Berger (collectively, "Defendants") based on allegations that Defendants sold consumer wiring and electrical devices bearing counterfeit certification marks.  On March 28, 2008, the Court granted Defendants' motion to dismiss Counts I and II of Plaintiff's original Complaint.  Those Counts asserted claims arising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as the federal Racketeer Influence and Corporate Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq*.  Nevertheless, the Court granted Plaintiff leave to amend its Complaint as to its claim brought pursuant to subsection 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  Accordingly, on April 28, 2008, Plaintiff filed an Amended Complaint.

Currently before the Court is Defendants' motion to dismiss Counts II, III, and V of Plaintiff's Amended Complaint for failure to state claims upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, the Court grants Defendants' motion to dismiss.

I.   BACKGROUND

Plaintiff and Defendants are competitors in the business of purchasing and selling "consumer wiring and related electrical devices" ("wiring devices"), such as extension cords, electric switches, night-lights, wiring adapters and conductors, power strips, surge protectors, and power outlets. (Amended Complaint ("Am. Cmplt.") ¶¶ 8, 15). This action involves the sale of wiring devices that allegedly bore counterfeit or "de-listed" markings issued by Underwriters Laboratories ("UL").[1]

In its original Complaint, Plaintiff asserted claims pursuant to the Lanham Act, 15 U.S.C. § 1125(a), the federal RICO Act, 18 U.S.C. § 1961 *et seq.*, the New Jersey RICO Act, N.J.S.A. 2C:41-1 *et seq.*, ("NJRICO"), and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, ("NJCFA"), which governs unconscionable trade practices. In addition, Plaintiff asserted common law claims of unfair competition and tortious interference with prospective economic advantage. On March 28, 2008, the Court granted Defendants' motion to dismiss Counts I and II of that Complaint, which alleged violations of section 43(a) of the Lanham Act and the federal RICO Act. As to the federal RICO claim, the Court found that Plaintiff could not assert a civil

---

[1] In this Court's previous Opinion dated March 28, 2008, the Court set forth the facts underlying Plaintiff's allegations. *Trans USA Prod., Inc. v. Howard Berger Co.*, 07-5924, 2008 WL 852324 (D.N.J. Mar. 28, 2008). Thus, the Court refrains from stating at length those allegations, but rather focuses on those portions of Plaintiff's Amended Complaint that relate specifically to this motion.

cause of action under 18 U.S.C. § 1964(c). Specifically, the Court held that Plaintiff's RICO claim failed to meet the notice pleading requirement of Federal Rule of Civil Procedure 8(a), and did not allege a "pattern of racketeering activity" as required by 18 U.S.C. § 1962(b) or (c).

In that Opinion, the Court also found that Plaintiff's Complaint failed to state either a false designation or false advertisement claim pursuant to 15 U.S.C. § 1125(a)(1). Nevertheless, the Court determined that Plaintiff's proposed amendments to its Complaint could potentially cure the defects in Plaintiff's false designation claim, but not in the false advertisement claim.[2] For that reason, the Court granted Plaintiff leave to amend its Complaint as to the false designation claim brought pursuant to section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

On April 28, 2008, Plaintiff filed the present Amended Complaint. In the Amended Complaint, Plaintiff specified the types of wiring devices that it and Defendants sold or distributed, (Am. Cmplt. ¶ 8), stated that the allegedly wrongful conduct occurred "[f]or a period of time prior to December 5, 2006," (Am. Cmplt. ¶ 16), and identified specific wiring devices that allegedly bore counterfeit or "de-listed" UL Marks, (Am. Cmplt. ¶ 16a-c). Plaintiff also specified the "interstate markets" in which Defendants sold the wiring devices at issue. (Am. Cmplt. ¶¶ 17, 21, 26). Those markets include: "Memphis, Tennessee; Chicago, Illinois;

---

[2] On the previous motion to dismiss, Plaintiff did not provide the Court with a proposed First Amended Complaint. Rather, Plaintiff submitted in its brief that it could amend its Complaint to provide greater specificity by: (1) identifying the products bearing the counterfeit UL Marks by providing their physical description, their brand name, and the specific UL file numbers and date codes that were counterfeit or de-listed; (2) specifying the time period in which Defendants sold the Wiring Devices; (3) identifying the markets in which Defendants sold the products; (4) identifying customers Plaintiff lost due to Defendants' activities; and (6) specifying that it seeks relief under 15 U.S.C. § 1125(a)(1)(A) and (B).

Jacksonville, Florida; Henderson, North Carolina; Waukeegan, Illinois; and New York, New York (as well as in states other than New Jersey)[.]" (Am. Cmplt. ¶ 17). Notably, Plaintiff did not allege that Defendants sold any devices in New Jersey that bore the alleged counterfeit or de-listed UL marks.

Based on those amended allegations, Plaintiff asserted five counts against Defendants. In Count I, Plaintiff alleged that Defendants violated section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), by selling wiring devices that falsely represented approval by the UL. (Am. Cmplt. ¶¶ 19-21). Count II asserts a civil cause of action under NJRICO, N.J.S.A. 2C:41-1 *et seq.* (Am. Cmplt. ¶¶ 22-26). Plaintiff amended the allegations asserted in Count II, although, in the March 28, 2008 Order, the Court did not grant Plaintiff leave to amend its NJRICO claim. Specifically, in paragraph 26 of the Amended Complaint, Plaintiff identified those customers from which Plaintiff lost business as a result of Defendants' allegedly wrongful activity. (Am. Cmplt. ¶ 26).[3]

In Count III, Plaintiff alleges that Defendants violated the NJCFA, N.J.S.A. 56:8-1 *et seq*. (Am. Cmplt. ¶¶ 27-29). Plaintiff claims that Defendants' actions "constitute unconscionable trade practices, deceptions, frauds, false pretenses, misrepresentations and knowing concealment, suppression and omission of material facts with the intent that they be relied upon in connection

---

[3] *Cf.* (Complaint ¶ 31). In paragraph 26 of the Amended Complaint, Plaintiff alleges that Defendants' actions caused Plaintiff to lose sales and profits. (Am. Cmplt. ¶ 26). Plaintiff added, without prior approval, the specification that Plaintiff lost sales and profits by "having to cut reasonable profit margins to such customers as Fred's (Memphis, Tennessee); B.E. Atlas (Chicago, Illinois); Florida Hardware (Jacksonville, Florida); Variety Wholesalers (Henderson, North Carolina); HOBO's (Waukeegan, Illinois); and General Wholesale Electric (Bronx, New York, New York) (as well as others in states other than New Jersey), and [that it] has otherwise suffered financial losses as a result of" Defendants' alleged violations of NJRICO. (Am. Cmplt. ¶ 26). *Cf.* (Complaint ¶ 31).

with the advertisement and sale of goods in violation of" the NJCFA. (Am. Cmplt. ¶ 28). Plaintiff further asserts that, as a direct competitor of Defendants, it suffered financial losses in sales and profits resulting from Defendants' NJCFA violations. (Am. Cmplt. ¶ 29).

Plaintiff sets forth a claim of unfair competition in Count IV, alleging that Defendants' conduct afforded Defendants "an unfair competitive advantage over" Plaintiff "in transactions with prospective customers[.]" (Am. Cmplt. ¶¶ 30-32). Plaintiff also added in this Count that it sought compensatory damages, "jointly and severally" from Defendants. (Am. Cmplt. ¶ 32). Plaintiff did not specifically assert joint and several liability in the original Complaint, and did not seek leave to amend its Complaint in this respect. (Complaint ¶ 37).

Finally, in Count V, Plaintiff claims that Defendants tortiously interfered with Plaintiff's prospective economic advantage. (Am. Cmplt. ¶¶ 33-36). Specifically, Plaintiff alleges that Defendants, because they sold wiring devices with counterfeit and/or de-listed UL marks, were able to underprice those devices as compared to Plaintiff's prices. (Am. Cmplt. ¶ 34). Plaintiff asserts that this underpricing afforded Defendants with an unfair competitive advantage of Plaintiff in transactions with prospective customers. (Am. Cmplt. ¶ 34). Furthermore, Plaintiff claims that this conduct "effectively foreclosed [Plaintiff] from competing in segments of the marketplace for [w]iring [d]evices[.]" (Am. Cmplt. ¶ 35). In the Amended Complaint, Plaintiff also added a paragraph that did not exist in the original Complaint: "As a proximate result of the said [D]efendants' conduct, [P]laintiff has suffered damages." (Am. Cmplt. ¶ 36). Plaintiff did not seek leave from the Court to amend its Complaint to add this paragraph.

Defendants now move to dismiss Counts II, III, and V of Plaintiff's Amended Complaint for failure to state claims upon which relief may be granted. Defendants initially seek the Court

to strike Count II from the Amended Complaint because Plaintiff amended its NJRICO claim without seeking leave to do so. Furthermore, Defendants assert that Plaintiff's NJRICO claim nonetheless fails to state a claim because: (1) the claim does not specify the underlying law, failing to give Defendants sufficient notice of the claims asserted against it; (2) Plaintiff does not allege that the conduct occurred in New Jersey; and (3) Plaintiff has not pled with the requisite specificity the fraudulent acts allegedly committed by each Defendant, or that Defendants engaged in a "pattern of racketeering activity" in violation of NJRICO. Defendants also move to dismiss Count III, the consumer fraud claim, because, Defendants assert, Plaintiff lacks standing to bring an action under NJCFA and has failed to specifically plead the fraudulent conduct. Finally, Defendants argue that Plaintiff fails to state a claim for tortious interference with prospective economic advantage because Plaintiff has not sufficiently alleged the elements necessary to assert such a claim.

Plaintiff opposes the motion. Plaintiff responds that the Amended Complaint sufficiently pleads causes of action for violations of the NJCFA and for tortious interference with prospective economic advantage. Significantly, Plaintiff asserted no opposition to Defendants' motion to dismiss the NJRICO claim asserted in Count II.

II. DISCUSSION

    A. **Standard of Review under Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. On a motion to dismiss, the Court "must accept as true all factual allegations in the . . . complaint and all reasonable inferences that can be drawn from them." *Banks v. Wolk*, 918 F.2d 418, 419 (3d Cir. 1990).

Nevertheless, recently refashioning the appropriate standard, the Supreme Court of the United States found that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal quotation marks omitted)).  Therefore, for a complaint to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, *supra*, 127 S. Ct. at 1965 (internal citations and footnote omitted).

Moreover, when a party asserts a common law fraud claim, heightened pleading requirements apply pursuant to Federal Rule of Civil Procedure 9(b).  Fed. R. Civ. P. 9(b); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  That Rule provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  Federal Rule of Civil Procedure 9(b), thereby, requires "a plaintiff alleging fraud [to] state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which it is charged.'" *Frederico*, *supra*, 507 F.3d at 200 (quoting *Lum v. Bank*

*of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)) (internal editing marks omitted).  A plaintiff must meet this standard by pleading "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *Ibid.*

**B.     Analysis**

**1.     Count II - The NJRICO Claim**

In its Amended Complaint, Plaintiff asserts a claim alleging that Defendants violated NJRICO.  Defendants now move to dismiss that Claim for failure to state a claim upon which relief may be granted.  Plaintiff has not opposed this part of Defendants' motion.  "Nevertheless, the Court must address an unopposed motion to dismiss . . . for failure to state a claim on the merits."  *County of Hudson v. Janiszewski*, 520 F. Supp. 2d 631, 649 (D.N.J. 2007) (internal quotation marks omitted).  *Accord Stackhouse v. Mazurkiewicz*, 951 F.2d 29 (3d Cir. 1991) (reversing district court's grant of motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6) because district court dismissed action under local civil rule for failure to oppose motion).

Defendants assert various grounds upon which the Court should dismiss Plaintiff's NJRICO claim.  For purposes of this motion, the Court addresses the argument it finds most cogent:  that is, that Plaintiff cannot state a claim under NJRICO for actions that occur outside the borders of New Jersey.  As a result, the Court finds that Plaintiff's NJRICO claim must substantively fail because Plaintiff has not alleged wrongful conduct occurring within New Jersey.

New Jersey statutory law provides for civil remedies for violations of the state's racketeering laws.  N.J.S.A. 2C:41-4c.  Similar to the federal RICO statutes, NJRICO proscribes

engagement or participation in "a pattern of racketeering activity" that affects trade or commerce. N.J.S.A. 2C:41-2a-c. The New Jersey Legislature enacted NJRICO with the purpose of safeguarding public interest by "prevent[ing], disrupt[ing,] and eliminat[ing] the infiltration of organized crime type activities which are substantial in nature into the legitimate *trade or commerce of this State*." N.J.S.A. 2C:41-1.1c (emphasis supplied). The Legislature found civil and criminal sanctions necessary to protect "the general health, welfare and prosperity of the State and its inhabitants[.]" *Ibid.* Furthermore, the New Jersey Code of Criminal Justice, under which falls NJRICO, specifically limits its territorial reach to conduct that occurs within the State. N.J.S.A. 2C:1-3a.

Although NJRICO is generally more flexible in its application than the federal RICO statute, *State v. Ball*, 141 N.J. 142, 156-62, 166-67 (1995), it seeks "to address the influence of organized crime upon New Jersey businesses[,]" *Metz v. United Counties Bancorp*, 61 F. Supp. 2d 364, 371 (D.N.J. 1999). Considering the statutory language of, and legislative intent behind, NJRICO, the Appellate Division of the New Jersey Superior Court has held that, to criminally convict a person for racketeering under N.J.S.A. 2C:41-2(c), the State must "show that [the] defendant was employed by or associated with a racketeering enterprise which engaged in trade or commerce in New Jersey or affected trade or commerce in New Jersey." *State v. Casilla*, 362 N.J. Super. 554, 565 (App. Div. 2003). That court reasoned that, because the federal RICO statute proscribes conduct affecting interstate commerce, "there would be no need for the New Jersey statute to extend to criminal conduct that affects only interstate trade or commerce or trade or commerce in other states." *Id.* at 564-65.

The Court now finds that reasoning persuasive and determines that New Jersey courts

would hold that a civil cause of action brought under NJRICO requires conduct to occur in, or affect, trade or commerce in New Jersey. Although Plaintiff pleads that Defendant Howard Berger Company, Inc. is a New York corporation with its principal place of business in New Jersey, Plaintiff does not allege that any of the wrongful conduct occurred in New Jersey. Rather, Plaintiff specifically lists the affected markets as being located in Tennessee, Illinois, Florida, North Carolina, and New York, as well as other states "other than New Jersey[.]" Because the alleged "pattern of racketeering activity"[4] did not occur in New Jersey commerce, or affect New Jersey commerce, the Court concludes that Plaintiff cannot state a claim under NJRICO. Thus, the Court dismisses Count II of Plaintiff's Amended Complaint.

### 2. Count III - The NJCFA Claim

Next, Defendants move to dismiss Plaintiff's Count III, which asserts a claim under the NJCFA. In Count III, Plaintiff alleges that Defendants violated NJCFA by selling wiring devices that bore counterfeit or de-listed UL marks. Defendants argue that Plaintiff does not have standing to bring an action under NJCFA because it is not a "consumer" for purposes of the statute. Moreover, Defendants claim that Plaintiff has not pled its NJCFA claim with the requisite specificity. In response, Plaintiff contends that it may assert a claim under NJCFA based on its status as Defendants' competitor, and that it has sufficiently pled the claim with particularity.

The NJCFA declares as unlawful practices

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the

---

[4] The Court does not consider here whether Plaintiff's Amended Complaint sufficiently alleges a "pattern of racketeering" sufficient to state a claim under NJRICO.

>knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby[.]

N.J.S.A. 56:8-2. The NJCFA provides the right to initiate a private cause of action to "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result" of a violation of the NJCFA. N.J.S.A. 56:8-19. Further, the Act defines "person" to include "any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof[.]" N.J.S.A. 56:8-1(d).

The New Jersey Legislature enacted the NJCFA to limit sharp business practices and dealings, and to protect consumers from being "victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." *Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 271 (1978). Indeed, the NJCFA "was designed to protect consumers." *J &R Ice Cream Corp. v. Cal. Smoothie Licensing Corp.*, 31 F.3d 1259, 1272 (3d Cir. 1994).[5] The United States Court of Appeals for the Third Circuit has found that, "although the Consumer Fraud Act does not define the term 'consumer' or contain an explicit 'retail restriction,' it was intended to protect persons engaging in 'consumer' transactions[.]" *Ibid.* *Accord Arc Networks, Inc. v. Gold Phone Card Co.*, 333 N.J. Super. 587, 589 (Law Div. 2000) ("The entire thrust of the Act is pointed to products and services sold to

---

[5] In *J & R Ice Cream Corp.*, the Third Circuit held that the NJCFA does not apply to distribution or franchise transactions. *J & R Ice Cream Corp.*, *supra*, 31 F.3d at 1274. Although New Jersey courts have expressed disagreement with this result, the Court finds the Third Circuit's expression of the policy underlying the NJCFA accurate. *See Kavky v. Herbalife Int'l of Am.*, 359 N.J. Super. 497, 500-02 (App. Div. 2003).

consumers in the popular sense." (internal quotation marks omitted)).

Further, "'a corporation may qualify as a person under the Act when it finds itself in a consumer oriented situation[.]'" *Id.* at 1273 (quoting *BOC Group, Inc. v. Lummus Crest, Inc.*, 251 N.J. Super. 271, 277 (Law Div. 1990)). Thus, "to be a consumer respecting the transaction in question, the business entity must be one who uses (economic) goods, and so diminishes or destroys their utilities." *City Check Cashing, Inc. v. Nat'l State Bank*, 244 N.J. Super. 304, 309 (App. Div. 1990) (internal quotation marks omitted). *See also Viking Yacht Co. v. Composites One LLC*, 496 F. Supp. 2d 462, 474 (D.N.J. 2007) (noting that NJCFA does not protect wholesalers). In addition, the NJCFA "is not intended to cover every transaction that occurs in the marketplace[; i]ts applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself." *Arc Networks, Inc.*, *supra*, 333 N.J. Super. at 590 (citing *City Check Cashing, Inc.*, *supra*, 244 N.J. Super. 304). Accordingly, to determine the application of the NJCFA, a court should consider "the character of the transaction rather than the identity of the purchaser[.]" *J &R Ice Cream Corp.*, *supra*, 31 F.3d at 1273.

Applying those principles here, the Court finds that Plaintiff does not have standing to bring a cause of action under NJCFA. Plaintiff bases the NJCFA claim on allegations of unfair competition and Plaintiff's status as a competitor to Defendants. Importantly, Plaintiff is not a direct purchaser of the wiring devices alleged to bear fraudulent UL marks and, has not used or diminished those goods. Plaintiff does not assert that it has been "victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." *Daaleman*, *supra*, 77 N.J. at 271. For those reasons, the Court finds that the NJCFA is not intended to protect competitors such as Plaintiff that do not suffer a consumer-like injury.

Therefore, the Court holds that Plaintiff cannot bring a claim under NJCFA.

Moreover, the Court further finds that, even if Plaintiff had standing to bring a NJCFA claim, Plaintiff's Amended Complaint fails to meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b).  Indeed, a claim arising under NJCFA must be pled with particularity in accordance with Federal Rule of Civil Procedure 9(b).  *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999).  It has been held that "[p]leadings containing collectivized allegations against 'defendants' do not suffice." *Ibid.* Rather than vaguely addressing alleged fraudulent statements to collective defendants, a plaintiff "must plead fraud with particularity with respect to each defendant" such that the complaint informs "each defendant of the nature of its alleged participation in the fraud." *Ibid.*

Here, Plaintiff vaguely attributes the alleged fraudulent conduct to Defendants as whole. Plaintiff does not specify which Defendants actually sold the wiring devices bearing fraudulent markings and when those sales occurred—apart from "a period of time prior to December 5, 2006."  Also, Plaintiff fails to identify the role played by the individual Defendants in the participation of the allegedly fraudulent conduct, such that they may be held liable.  Plaintiff's Amended Complaint, thus, does not inform each Defendant "of the nature of its alleged participation in the fraud[,]" and fails to meet the pleading standard in accordance with Federal Rule of Civil Procedure 9(b).  *Ibid.*

As a result, the Court concludes that Plaintiff does not state a claim upon which relief may be granted.  First, Plaintiff is not an entity, and the alleged injury sustained by Plaintiff is not one, that NJCFA intends to protect.  Second, even if Plaintiff's allegations could invoke the protections of NJCFA, Plaintiff has failed to allege the fraudulent conduct with specificity.  The

Court, therefore, grants Defendants' motion to dismiss Plaintiff's Count III.

### 3. Count V - The Tortious Interference Claim

Finally, Defendants move to dismiss Count V of Plaintiff's Amended Complaint. In Count V, Plaintiff asserts a claim of tortious interference with prospective economic advantage. Defendants argue that Plaintiff cannot state such a claim because Plaintiff has not alleged that: (1) it has a continuing or prospective relationship with any particular customer; (2) it was reasonably probable that Plaintiff would have obtained an economic advantage but for Defendants' conduct; (3) Defendants knew or should have known of Plaintiff's relationship with certain customers; or (4) Defendants acted intentionally or with malice.

The common law cause of action for tortious interference with a prospective economic advantage "protects the right to pursue one's business, calling, or occupation free from undue influence or molestation." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993) (quoting *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 750 (1989)) (internal quotation marks omitted). Under New Jersey law, a claim of tortious interference includes five elements:

> (1) a plaintiff's existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference.

*Lightning Lube, Inc.*, *supra*, 4 F.3d at 1167 (citing *Printing Mart-Morristown*, *supra*, 116 N.J. at 751-52).

The Court finds that Plaintiff's bare allegations are insufficient to state a claim of tortious interference with prospective economic advantage. Although Plaintiff asserts in paragraph 18 of

its Amended Complaint that Plaintiff lost sales to certain identified customers, Plaintiff's Amended Complaint fails to allege the elements necessary to set forth a claim of tortious interference under New Jersey law. Significantly, Plaintiff does not allege that it had a reasonable expectation in a continuing business relationship with certain customers, that Defendants knew of Plaintiff's relationship with those entities, or that a reasonable probability existed that, absent Defendants' interference, Plaintiff would have been able to execute sales to those identified customers. Thus, even construing as true the Amended Complaint, Plaintiff has not stated a *prima facie* claim for tortious interference.

Further, Plaintiff's tortious interference claim appears to be a reiteration of its unfair competition claim. Count V is based almost entirely on the allegation that Defendants' sale of certain wiring devices "foreclosed" Plaintiff from competing in identified marketplaces.[6] Plaintiff cannot sustain a tortious interference cause of action based solely on the loss of customers. *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 494 (D.N.J. 1998).

Therefore, the Court holds that Plaintiff has failed to state a claim of tortious interference with prospective advantage and dismisses Count V from the Amended Complaint. The Court further finds that leave to amend could not cure the existing defects. Although Plaintiff does not seek leave to amend, any amendment would be futile. Fed. R. Civ. P. 15(a); *Phillips v. Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). After having exceeded the scope of the Court's prior leave to amend, Plaintiff has nonetheless failed to cure many defects in the Amended

---

[6] This is the same language Plaintiff used in Count IV, which asserts an unfair competition claim. Comparing paragraphs 34 to 35 of Count V with paragraph 31 of Count IV, it is evident that Plaintiff merely reworded and recast the allegations set forth in the unfair competition claim into the tortious interference claim.

Complaint.  Plaintiff has not identified any set of allegations that it could assert that would adequately set forth a claim of tortious interference.  Accordingly, the Court dismisses Count V with prejudice.

### III.   CONCLUSION

For the reasons expressed above, the Court grants Defendants' motion to dismiss for failure to state claims as to Counts II, III, and V of Plaintiff's Amended Complaint.  In addition, the Court strikes from paragraph 32 of the Amended Complaint the language "jointly and severally" because Plaintiff added this language without seeking leave from the Court, and because to permit this amendment would cause prejudice to Defendants.  *See Click Corp. of Am. v. Redco Foods, Inc.*, 424 F. Supp. 2d 753, 764 (D.N.J. 2006).  An appropriate order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: August 4, 2008